
# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

ALFRED BALDASSARRE,                )
                                   )
     Plaintiff,                   )
                                   )
v.                                 )       Civil Action No. 2:18-cv-598
                                   )
NORFOLK SOUTHERN RAILWAY           )
CO.,                               )
                                   )
     Defendant.                   )

## OPINION & ORDER

These matters come to the Court on Defendant Norfolk Southern Railway's ("Defendant" or "Norfolk Southern") motion for summary judgment ("the Summary Judgment Motion"), Doc. 15, and Plaintiff Alfred Baldassarre's ("Plaintiff") motion to strike the Declaration of Spencer Bolander ("the Bolander Declaration"), Doc. 22. In addition to those motions, the Court will also consider herein Plaintiff's motions for the Court to: (1) strike the Declaration of Jason Brandenburg, Doc. 16-4 ("the Brandenburg Declaration"); (2) draw an inference against Defendant due to Defendant's invocation of privilege as to certain e-mail documents; and (3) draw an inference against Defendant for the failure of Shawna Baines and Darnell Wood to attend their respective depositions.

The Court held a hearing on these matters on Thursday, September 5, 2019, and to conduct the Final Pretrial Conference in this matter. Before reaching the Final Pretrial Order, this Court heard arguments on the instant motions. The Court ruled from the bench and **GRANTED** Defendant's Summary Judgment Motion. The Court further **DENIED** Plaintiff's motions to strike the Brandenburg and Bolander Declarations and to draw adverse inferences against Defendant. The Court hereby issues this written Opinion and Order to describe its decision in more detail.

1

# I. PROCEDURAL BACKGROUND

This failure to accommodate a disability case began on November 13, 2018, when Plaintiff filed his complaint in this Court. Doc. 1. Plaintiff alleges that Defendant failed to accommodate his post-traumatic stress disorder ("PTSD"), in violation of the Americans with Disabilities Act ("ADA"). Although the details of the Equal Employment Opportunity Commission's ("EEOC") involvement are not clear from the record, it appears that prior to filing suit, Plaintiff filed three EEOC charges. Doc. 21 at 8. Neither those charges, nor any other EEOC record documents, are in the record before the Court.

In his complaint to this Court, Plaintiff alleges that he suffers from PTSD and that he began working as a through-freight conductor for Defendant. The unpredictable work schedule of a through-freight conductor aggravated his PTSD, and Plaintiff requested that he be given a predictable schedule position. Defendant denied this accommodation. Doc. 1 ¶¶ 6-7, 10-11, 17. Defendant answered the complaint on December 10, 2018. Doc. 5.

No dispositive motions have been filed in this case until the motion considered herein was filed.

On August 9, 2019, Defendant moved for summary judgment. Doc. 15. This Court entered a summary judgment briefing order on August 14, 2019, setting deadlines for responsive papers to Defendant's Summary Judgment Motion. Doc. 17. Plaintiff timely opposed Defendant's Summary Judgment Motion on August 19, 2019. Doc. 18. Defendant filed its rebuttal brief on August 23, 2019. Doc. 22. Plaintiff filed motions to strike the Bolander and Brandenburg Declarations. Docs. 21, 22. Plaintiff did not file a motion for summary judgment.

## II. PRELIMINARY MATTERS

### A. LEGAL STANDARD

A party is required to provide the name, address, and telephone number of any individual likely to have discoverable information. Fed. R. Civ. P. 26(a)(1)(A)(i). If a party fails to do so, it may not use information from that witness to support a motion, at a hearing, or at trial, unless the party's failure to disclose was substantially justified or harmless. Id. at R. 37(c)(1). Trial courts have broad discretion on whether to allow evidence under rule 37(c)(1). S. States Rack and Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003). Courts have recognized that excluding a declaration is a harsh result and look to the circumstances surrounding the nondisclosure when deciding whether to preclude use of a declaration under rule 37(c)(1). See, e.g., Lavigna v. State Farm Mut. Auto. Ins. Co., 736 F. Supp. 2d 504, 511-12 (N.D.N.Y. 2010) (permitting a late-disclosed declaration where the declaration was offered due to "the changing trajectory of the case," was not offered in bad faith, was disclosed before the "eve of trial," and was largely duplicative of other evidence in the record). In the Fourth Circuit, courts use five factors to guide the use of their discretion on whether a failure to comply with discovery obligations bars evidence: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. S. States Rack, 318 F.3d at 597.

### B. THE BRANDENBURG DECLARATION

Defendants attached the Brandenburg Declaration as Exhibit 4 to the Summary Judgment Motion. Mr. Brandenburg is a Road Operations Manager at Norfolk Southern. Doc. 16-4 ¶ 2. In his declaration, Mr. Brandenburg summarizes the conditions in which conductors work. He

3

indicates that being a conductor is a physically demanding job that entails a shift that is at least ten (10) hours long. Id. ¶ 4. Most conductor positions are "on call" positions. Id. ¶ 5. Accordingly, most conductor positions do not have a predictable work schedule. Id. Those conductor positions that have a predictable work schedule are usually obtained by the most senior employees. See id. ¶ 6.

In his reply brief, Plaintiff argues that Defendants did not disclose Mr. Brandenburg as a witness and moves the Court to disregard the declaration. Doc. 18 at 3. Significantly, Plaintiff does not dispute many of the facts asserted in the Brandenburg Declaration, as evidenced by Plaintiff's conceding the undisputed facts filed by Defendant which rely on the Brandenburg Declaration. See Doc. 18 at 2-9. Plaintiff does dispute the allegation that he lacked enough seniority to hold the predictable-schedule positions. However, Mr. Brandenburg does not opine on Plaintiff's seniority status. See Doc. 16-4. Mr. Brandenburg only discusses conductor positions generally and not Plaintiff's fitness for a conductor position. See Doc. 16-4.

Defendant concedes that Mr. Brandenburg was not previously disclosed but argues that the Court should still consider his declaration, because the failure to disclose was harmless. Doc. 21 at 5.

Here, the substance of the Brandenburg Declaration should not constitute surprise, as the facts contained therein are undisputed and largely similar to the deposition testimony of Charles Hunt, Doc. 16-3. Furthermore, the information is important to the case as Mr. Brandenburg clarifies the demands of a conductor position and the seniority system, both of which are important issues in this case. These factors weigh in favor of allowing the declaration.

The balance of the <u>Southern States Rack</u> factors weigh in favor of permitting the Brandenburg Declaration into the summary judgment record. Accordingly, the Court **DECLINES** Plaintiff's invitation to disregard the Brandenburg Declaration.

## C.    THE BOLANDER DECLARATION

The Bolander Declaration was filed as an exhibit to Defendant's rebuttal brief in support of its motion for summary judgment. Doc. 21-1. Mr. Bolander is the Assistant Director of Labor Relations at Norfolk Southern. <u>Id.</u> ¶ 2. His declaration quotes two passages from a collective bargaining agreement ("CBA") which govern Norfolk Southern's conductor positions. <u>Id.</u> ¶¶ 5-6. The CBA is not otherwise in the summary judgment record.[1] Mr. Bolander explains that Plaintiff was subject to the CBA provisions cited in his declaration and did not have enough seniority to <u>regularly</u> hold a predictable-schedule position. <u>Id.</u> ¶¶ 5, 6. Plaintiff has not proffered evidence or argued that the CBA contains other relevant provisions which may support his own case.

On the same day that Defendant filed its rebuttal brief, and the Bolander Declaration, Plaintiff filed a one-page motion to strike the Bolander Declaration. Doc. 22. He argues that the Bolander Declaration should be struck because Mr. Bolander was not disclosed as a witness. <u>Id.</u> Plaintiff offers no further explanation to support his motion. <u>See</u> <u>id.</u>

Defendant argues that the Bolander Declaration is appropriate rebuttal evidence as to which it did not have an obligation to disclose. Doc. 23 at 2. Defendant cites <u>United States v. Mayer</u>, Case No.: 8:03-cv-415, 2004 U.S. Dist. LEXIS 31610 (M.D. Fla. Sept. 14, 2004). There, the court held "Defendants did not have had a duty to disclose <u>rebuttal or impeachment</u> witnesses pursuant to general Rule 26 disclosure requirements." <u>Id.</u> at * 8 (emphasis added). That case cited <u>Latner</u>

---

[1] At the September 7 hearing, counsel for Defendant conceded that neither party has actually entered the CBA into the summary judgment record and moved to add the CBA in its entirety into the summary judgment record. The Court **DENIED** that motion, because Defendant made the motion at such a late hour.

v. Delta-Ha, Cause No. IP01-993, 2002 U.S. Dist. LEXIS 19211, at *6-7 (S.D. Ind. Sept. 18, 2002) ("In responding to a motion for summary judgment, a party is not limited to obtaining evidence from only those witnesses previously identified in discovery. Even after the close of formal discovery, a party may keep digging informally for additional evidence, and especially for rebuttal and impeachment evidence.").

A party is required to provide the name and contact information of any individual likely to have discoverable information, unless that information is "solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). The rule, by its own terms, does not exempt rebuttal evidence, only impeachment evidence. Id.; Fed. R. Civ. P. 26 Advisory Committee Note to the 2000 Amendment ("The disclosure obligation [of rule 26(a)(1)] applies to 'claims and defenses,' and therefore requires a party to disclose information it may use to support its denial or rebuttal of the allegations, claim, or defense of another party."); see also United States v. Harris, 557 F.3d 938, 942 (8th Cir. 2009) (distinguishing rebuttal and impeachment evidence in a criminal case: "'Impeachment is an attack on the credibility of a witness, whereas rebuttal testimony is offered to explain, repel, counteract, or disprove evidence of the adverse party.'") (citations omitted). While some cases have held that rebuttal evidence, as well as impeachment evidence, are exempted from Rule 26(a)(1), Defendant has not cited any such case in the Fourth Circuit to that effect. Furthermore, that conclusion seems to be at odds with the plain language of the rule. Indeed, at least one court in this Circuit has drawn a distinction between "impeachment" and "substantive" evidence. Newsome v. Penske Truck Leasing Co., 437 F. Supp. 2d 431, 434-38 (D. Md. 2006) ("Substantive evidence is that which is offered to establish the truth of a matter to be determined by the trier of fact . . . Conversely, impeachment evidence is offered to discredit a witness and reduce the effectiveness of her testimony."). The Bolander Declaration is not offered to undermine Plaintiff's

6

credibility, rather it is offered to assert substantive evidence to respond to an allegation. Therefore, the Bolander Declaration is not impeachment evidence.

Nevertheless, the Court may permit Defendant to rely on the Bolander Declaration if its failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Defendant argues that the Southern States Rack factors counsel in favor of permitting the Bolander Declaration into the record. Doc. 23 at 3-4. The Court agrees.

The Court **FINDS** that the failure to disclose was substantially justified under Rule 37(c)(1) and the Southern States Rack test. Significantly, Defendant produced the Bolander Declaration in response to Plaintiff's argument that Norfolk Southern should have permitted him to "lay off" to accommodate his disability while acquiring seniority. Plaintiff advanced that argument for the first time in his reply to the Summary Judgment Motion. Therefore, the Bolander Declaration was filed in response to the "changing trajectory of the case." See Lavigna, 736 F. Supp. 2d at 511-12. Thus, Defendant has offered a good reason for its nondisclosure – Defendant was not on notice of Plaintiff's "lay off" argument until Plaintiff filed his reply brief to the Summary Judgment Motion. When asked at oral arguments about the date on which Plaintiff first advanced his "lay off" theory, Plaintiff's counsel indicated that he did not did not dispute that the earliest date on which Plaintiff made his "lay off" argument known was August 19, 2019, when he served his reply brief to the Summary Judgment Motion. Doc. 18.

Furthermore, the substance of the Bolander Declaration is similar to Mr. Hunt's deposition testimony. Compare Doc. 25-1, with Doc. 16-3. Mr. Bolander further explains the terms of the CBA, the seniority system, and Plaintiff's seniority relative to the other conductors. This evidence is important because it is highly probative to resolving Plaintiff's "lay off" argument, which he makes for the first time in his reply brief. Accordingly, the Court **FINDS** that Defendant's

disclosure of the Bolander Declaration was substantially justified and **DENIES** Plaintiff's motion to strike.

## D.    WHETHER TO DRAW A NEGATIVE INFRENCE FROM THE INVOCATION OF PRIVILEGE

In his reply brief, Plaintiff moves this Court to draw a negative inference in his favor because of Defendant's invocation of privilege as to certain e-mail messages. Doc. 18 at 4. Plaintiff does not indicate what privilege was asserted. See id. Defendant clarifies that it asserted attorney-client privilege and argues that to draw an adverse inference would be improper. Doc. 21 at 6. Plaintiff has not disputed that Defendant asserted attorney-client privilege.

Although courts in this Circuit draw negative inferences for invoking certain privileges in civil cases, e.g., Woodruff v. Thornsbury, Civil Action No. 2:13-24001, 2014 WL 5320611, at *4 (S.D.W. Va. Oct. 17, 2014) (Fifth Amendment Privilege), the Fourth Circuit has specifically rejected such inferences due to the invocation of attorney-client privilege. In Re: Tudor Assocs., 20 F.3d 115, 120 (4th Cir. 1994) ("A negative inference should not be drawn from the proper invocation of the attorney-client privilege."); Parker v. Prudential Ins. Co., 900 F.2d 772, 775 (4th Cir. 1990) ("Any such [adverse] inference would intrude upon the protected realm of the attorney-client privilege.").

Accordingly, the Court **DECLINES** to draw a negative inference from Defendant's invocation of attorney-client privilege.[2]

---

[2] Although the Court is required to draw all reasonable inferences in favor of the non-movant when considering a motion for summary judgment, it would be unreasonable to do so in this case, because under In re: Tudor Assocs. and Parker, the Court may not, as a matter of law, draw such an inference.

## E. WHETHER TO DRAW A NEGATIVE INFRENCE FROM THE FACT THAT WOODS AND BAINES FAILED TO ATTEND THEIR DEPOSITIONS

Plaintiff alleges that during discovery Shawna Baines and Darnell Woods did not appear for their depositions. Doc. 18 at 4, 8. Plaintiff argues that the Court should draw a negative inference that whatever the testimony of those two witnesses would have been, it would have been adverse to Defendant's case. Id.

Defendant argues neither witness is an employee of Norfolk Southern anymore and that drawing an adverse inference would be improper. Doc. 21 at 7. As to Mr. Woods, Defendant further argues that Plaintiff's subpoena would require Mr. Woods to travel over 100 miles from his residence, in violation of Rule 45(c)(1)(A)(ii). Id. As to Ms. Baines, Defendant further argues that Plaintiff conceded that he cannot locate Ms. Baines and presents no evidence that the Defendant could do so.

Plaintiff made no motions and filed no other pleading such or requests for admission in response to the witnesses failure to appear. He simply asserts that the witnesses failed to attend the depositions and therefore the Court should draw an adverse inference in his favor. He cites In re: 650 Ave., 08 Civ. 10934, 2013 U.S. Dist. LEXIS 127563 (S.D.N.Y. 2013). That case is distinguishable. A foreign party to the litigation (claimant-defendant) was ordered to appear for a deposition at the consulate in Dubai. Id. at *15-19. The court gave clear warnings that failure to appear would result in sanctions. Id. at *15-16. The parties' representatives did not appear for the deposition and the court found that such non-appearance was willful. Id. at *26. Accordingly, the court drew adverse inferences at trial and on summary judgment against the claimant-defendant. Id. at *32-36. There is no evidence that the witnesses' failure to appear in this case was willful nor is there a comparable court order.

## III. FACTUAL FINDINGS

Given the record before the Court, and including that portion which remain undisputed, the

Court **FINDS** that the following facts are established for summary judgment purposes.[3]

1. Norfolk Southern is a freight railroad that employs approximately 28,000 people, and operates more than 20,000 route miles in 22 states and the District of Columbia. Doc. 16-1 ("Euell Decl.") ¶¶ 1-3.

2. On January 3, 2011, Norfolk Southern hired Plaintiff as a Conductor Trainee based at its Altoona, Pennsylvania Facility (the "Altoona Facility"). Doc. 16-2 13:25; 14:1-8.

3. Plaintiff was promoted to Conductor on June 16, 2011. Euell Decl. ¶ 6.

4. Conductors are part of the Transportation Department at Norfolk Southern. Doc. 16-3, ("Hunt Dep.") 9:1-2. Conductors at Norfolk Southern are also governed by a collective bargaining agreement between Norfolk Southern and the United Transportation Union ("UTU"). Doc. 16-2 15:18-25; 16:2-3. As a result, Plaintiff position was governed by the CBA. Doc. 16-2 15:18-25; 16:2-3.

5. The CBA between Norfolk Southern and UTU is a contract that spells out seniority provisions for conductors at Norfolk Southern, among other things. Brandenburg Decl. ¶ 3.

6. The Conductor job is a physically demanding job. Brandenburg Decl. ¶ 4. The job description for a Conductor position specifies that job duties include working a shift that is 10 hours in length, but that may extend up to 12 hours within a 24-hour period. Brandenburg Decl. ¶ 4. Work shifts may also be irregular depending on the job assignment. Brandenburg Decl. ¶ 4.

7. Most Conductor assignments are on-call positions that require employees to be on-call, i.e. available to work, twenty-four hours a day, seven days per week. Hunt Dep. 14:4-10. This includes the through-freight conductor assignment. Brandenburg Decl. ¶ 5.

8. There are various types of Conductor jobs. One type of Conductor job is a through-freight assignment. A through-freight assignment requires a Conductor to get on a train at a station at any time of day, and to take the train from point A to point B, which is usually 100 miles or more away from his or her home. Hunt Dep. 10:5, 13, 14-16.

---

[3] Local Rule 56 requires a party opposing summary judgment to respond to the movant's list of undisputed facts. Loc. R. Civ. P. 56(B). If the non-movant fails to do so, those facts are conceded for purposes of the motion. Id. Here, Plaintiff only responds to seventeen (17) of Defendant's asserted facts, indicating that he omitted facts that he "neither disputes nor on which he relies . . . ." Doc. 18 at 2 n.1.

9. After reaching the destination, the Conductor in a through-freight assignment will spend the night in a Norfolk Southern-provided hotel or dormitory so that he or she can get the required eight or ten hours of rest before bringing a train back. Hunt Dep. 10:17-20.

10. In contrast to a through-freight assignment, local and yard Conductor jobs are jobs that report to a specific location at some point during any given day and can work up to 12 hours in that general location. Hunt Dep. 10:9-12.

11. Local and yard jobs are not on call assignments; thus, they are referred to as "reporting" jobs. Hunt Dep. 14:4-6, 17:7-10.

12. Pusher jobs are Conductor jobs where an engine is used to push a locomotive somewhere. Pusher jobs can be on call or reporting jobs. Doc. 16-2 94:6-12; Hunt Dep. 17:7-10.

13. Charles "Pete" Hunt was the trainmaster in the Altoona Facility at the time that Plaintiff was removed from service as a Conductor in January 2015. Hunt Dep. 5:10-12; 6:20- 25; 7:1.

14. Between August 2013 and August 2016, and as trainmaster, Hunt supervised approximately 225-235 employees, including approximately seven regularly scheduled pusher/helper jobs and three-yard jobs. Hunt Dep. 16:13-17:16.

15. Conductors must have sufficient seniority to hold a reporting Conductor assignment, such as a local or yard assignment, where the Conductor reports to a location for a set shift. Plaintiff did not have sufficient seniority under the CBA to regularly hold a set schedule yard or pusher assignment. Brandenburg Decl. ₱ 6, Hunt Dep. 11: 15-25; 12: 1-5; 14:11-17.

    a. Plaintiff disputes this fact insofar as it implies that <u>he</u> did not have sufficient seniority to hold a regular schedule conductor position at all.

16. Conductors are responsible for the safe and proper management of trains that are frequently operated through populated areas and whose cargo often consists of chemicals or other hazardous materials. Brandenburg Decl. ₱ 7.

17. Conductor positions are covered under the Hours of Service law and are recognized as safety-sensitive positions, potentially impacting not only the individual's own safety, but also that of his co-workers and the general public. Brandenburg Decl. ₱ 8; Doc. 16-2 93:19-21.

18. Norfolk Southern's Health Services Department ("NSHS") is charged with reviewing employee medical statuses on a case-by-case basis to ensure each employee is able to safely perform the essential functions of his or her position, with or without an accommodation. Euell Decl. ₱ 4.

19. All employees in safety-sensitive positions must alert Norfolk Southern if they have a medical condition that could impair their ability to work safely. Euell Decl. ₱ 4.

20. During his employment with Norfolk Southern, Plaintiff took a military leave of absence from January 2, 2012 through October 2, 2012. Euell Decl. ¶ 6. Plaintiff took a second military leave of absence from April 14, 2013 through April 26, 2013. Euell Decl. ¶ 6.

21. Plaintiff notified NSHS on March 7, 2014 that he had been diagnosed with PTSD following his return from military service in Iraq in 2012. Euell Decl. ¶ 6, Ex. A.

22. In a progress note dated December 16, 2014, Plaintiff's treating physician, Dr. Jason Cook, provided a letter to the NSHS Department stating that Plaintiff had been diagnosed with PTSD. Euell Decl. ¶ 7, Ex. B.

23. The December 16, 2014 progress note states, "[Alfred] continued to experience sleep disturbance and moderate levels of anxiety associated with his variable shift work and duties as a conductor." Euell Decl. ¶ 7, Ex. B.

24. The December 16, 2014 progress note also states, "Alfred . . . reports increasing difficulty with focus and is fearful that his focus will wander while on the job, thus contributing to an unsafe work environment." Euell Decl. ¶ 7, Ex. B.

25. The progress note continues, "Alfred reports that he would be more comfortable with a work duty in which catastrophic outcomes are not as much in the realm of possibility as his current work duty...he is fearful of his continued ability to manage the current stressors associated with the occupations duties of a conductor." Euell Decl. ¶ 7, Ex. B.

26. Following receipt of the medical questionnaire from Dr. Cook, Euell emailed supervisors within the Pittsburgh Division to ask if Plaintiff's work restriction as specified by Dr. Cook could be accommodated for the Conductor position. Euell Decl. ¶ 8.

27. Accordingly, on February 10, 2015, NSHS medically disqualified Plaintiff from the Conductor position. Euell Decl. ¶ 9.

28. Following his disqualification from the Conductor position, NSHS referred Plaintiff to its Vocational Rehabilitation Services ("VRS") program. Euell Decl. ¶ 10.

29. Norfolk Southern's VRS program is designed to assist Norfolk Southern employees return to work in positions that can accommodate any work restrictions that the employee may have. Doc. 16-5 ("Jones Dep.") 5:24-25; 6:1.

30. The VRS program seeks to return Norfolk Southern employees to gainful employment in railroad positions with Norfolk Southern or in positions outside of Norfolk Southern, if necessary. Jones Dep. 5:24-25; 6:1.

31. The VRS program also utilizes external counselors where needed and includes an education program to assist employees in getting a degree or certification, if needed for a given job. Jones Dep. 7:25; 8:1-10.

    a. Plaintiff disputes this fact insofar as it alleges that he was offered these services. Doc. 18 at 6. Otherwise this fact is undisputed. See Doc. 18. Nevertheless, Plaintiff concedes that he worked with VRS employees during his job search. E.g., Doc. 18-10 51:22-24.

32. VRS employee Shawna Baines initially assisted Plaintiff with his job search. Doc. 16-2 38:11-12.
    a. Plaintiff disputes this fact insofar as it claims that Baines actually assisted him. Doc. 18 at 7. At his deposition, Plaintiff conceded that he thought Baines was trying to help him. Doc. 16-2 51:22-24.

33. VRS Manager Matt Jones then began assisting Plaintiff with his job search in early 2016. Jones Dep. 32:11-16.

34. Jones identified several types of positions that would fit within Plaintiff's medical restrictions, and discussed with Plaintiff whether he had any interest in those jobs. Jones Dep. at 11:19-24.

35. Jones and Plaintiff discussed Plaintiff's potential interest in the following positions: Fireman-Oiler, Freight Car Repair, Storehouse Clerk and Track Laborer. Jones Dep. at 11:19-24. Each of these positions was deemed a potential fit for Plaintiff because they had consistent work schedules and could accommodate his work restrictions. Jones Dep. 11:17-24.

36. Jones received a weekly email with all job opens at Norfolk Southern. Jones Dep. 15:14-21. After identifying types of positions in which Plaintiff expressed an interest, Jones utilized the job openings email to search weekly for jobs that would fit Plaintiff. Jones Dep. 15:14-25; 16:1-8.

37. While working with VRS, up until October 21, 2015, Plaintiff restricted his job search to only available positions within Pennsylvania. Doc. 16-2 at 59:3-12.

38. After October 21, 2015, Plaintiff also considered positions in Ohio. Doc. 16-2 59:10-23; 72:16-21.

39. Jones identified available jobs for Plaintiff in geographic locations specified by Plaintiff; however, Plaintiff refused to interview for those jobs because he did not want to commute. Jones Dep. at 53:9-13.
    a. Plaintiff lists this fact in his brief, as if he intended to dispute it; however, he does not actually say whether he disputes it or offers any evidence to contradict the allegation. Doc. 18 at 9. Accordingly, the Court **FINDS** that the fact is admitted. Loc. R. Civ. P. 56(b).

40. On August 28, 2017, Jones notified Plaintiff of an available Storehouse Clerk position located in the Juanita Locomotive Shop in Altoona, Pennsylvania. Doc. 16-6, ("Jones Decl." ¶ 7, Ex. A.

41. Jones also informed Plaintiff that he would be required to pass a typing test and demonstrate the ability to type 35 words per minute for the Storehouse Clerk position. Jones Decl. ₽ 7.

42. Plaintiff took two typing tests and fell below the 35 word per minute requirement on both tests. Jones Decl. ₽ 9, Ex. B.

43. Although Plaintiff failed to pass the typing tests, Jones requested that the Juanita Shop accommodate Plaintiff by waiving the typing requirement. Jones Decl. ₽ 8.

44. After Norfolk Southern agreed to waive the typing requirement, Plaintiff started working in the Juanita Locomotive Shop Storehouse Clerk position in October 2017. Jones Decl. ₽ 10.

45. Between the time when Plaintiff was medically disqualified from his conductor position and the time he began working in the Juanita Locomotive Shop Storehouse, Plaintiff accepted several which were not affiliated with Norfolk Southern:

    a. In November of 2015, Plaintiff began working for the City of Green, Ohio. Doc. 18-10 59:23-25, 60:2-3.

    b. In March of 2016, Plaintiff began working for the Rittman National Cemetery. Doc. 18-10 66:2-9.

    c. In June of 2016, Plaintiff took a position as a Maintenance Worker at a National Park. Doc. 18-10 67:7-25, 28:2-16.

    d. In November of 2016, Plaintiff resumed employment with the City of Green, Ohio, after a month or two-month period of unemployment. Doc. 18-10 82:14-18, 83:7-18.

    e. In the Spring of 2017, Plaintiff took a permanent position as a Facility Maintenance worker at the National Park. Doc. 18-10 84:3-24.

46. While Plaintiff was working for the City of Green, Ohio, the National Park, and the National Cemetery, Plaintiff was communicating with Norfolk Southern. Doc. 18-10 at 85:16-20.

47. Plaintiff then voluntarily resigned from the Storehouse Clerk position less than a year later, in June 2018, to work for another company. Doc. 16-2 117:10-12; Jones Decl. ₽ 10.

## IV. MOTION FOR SUMMARY JUDGMENT

It is undisputed that Plaintiff could not perform the job he held. As Plaintiff concedes, "no reasonable person could find that [he] could safely perform the essential functions of a through-freight conductor." Doc. 18 at 1. Plaintiff does not argue that "withholding him from service as a through-freight conductor" violated the ADA. Id. at 2. Plaintiff also concedes that he was ultimately accommodated. Id. at 14. Rather, Plaintiff argues that this is solely a failure to accommodate case. Plaintiff offers two arguments to support his failure to accommodate theory. First, he argues that Norfolk Southern could have reasonably accommodated him by letting him work predictable schedule conductor jobs. When he was not senior enough to hold those positions, Plaintiff argues that Defendant should have let him "lay off" that is, not work and wait, for a predictable schedule position for which he was sufficiently senior. Second, Plaintiff argues that, if he could not work as a conductor, Defendant could have reasonably accommodated him by reassigning him to a different job in a different department. The Court will consider each argument in turn.

## A.    LEGAL STANDARD

### i. Summary Judgment Standard

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–50 (1986); Terry's Floor Fashions v. Burlington Indus., 763 F.2d 604, 610 (4th Cir. 1985). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings

but must instead set forth specific facts illustrating genuine issues for trial. Celotex, 477 U.S. at 322–24. Such facts must be presented in the form of exhibits and sworn affidavits. Failure to rebut the motion with such evidence will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

A mere scintilla of evidence is insufficient to withstand a motion for summary judgment. Rather, the evidence must be such that the fact-finder reasonably could find for the nonmoving party. See Anderson, 477 U.S. at 252. Although the court must draw all justifiable inferences in favor of the nonmoving party, in order to successfully defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in his pleadings." Doyle v. Sentry Ins., 877 F. Supp. 1002, 1005 (E.D. Va. 1995) (citing Celotex, 477 U.S. at 324).

*ii. Failure to Accommodate Under the ADA*

In order to succeed on a failure to accommodate claim, a plaintiff must prove that (1) he had a disability, (2) employer had notice of the disability, (3) that he could perform the essential functions of his job with a reasonable accommodation, (4) the employer denied the reasonable accommodation. Stephenson v. Pfizer, 641 F. App'x 214, 219 (4th Cir. 2016), Wilson v. Dollar General, Inc., 717 F.3d 337, 345 (4th Cir. 2013).[4] Plaintiff must also prove that he is a "qualified individual. 42 U.SC. § 12112(a); see also 42 U.S.C. § 12111(8) (defining qualified individual as,

---

[4] Adverse employment action is not an element of a failure to accommodate claim. See Stephenson v. Pfizer, 641 Fed. App'x 214 (4th Cir. 2016), Wilson v. Dollar General, Inc., 717 F.3d 337 (4th Cir. 2013). The Tenth Circuit recently held, however, that adverse employment action is a required element. Exby-Stoley v. Bd. of Cty. Comms., 906 F.3d 900 (10th Cir. 2018). However, that court granted rehearing en banc, 910 F.3d 1129 (10th Cir. Dec. 18, 2018), oral arguments have been made, and a decision is pending. In any event, the Fourth Circuit has not recognized that additional element.

"an individual, who with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.").

The plaintiff has the burden of identifying an accommodation that would allow a qualified individual to perform the job he holds, as well as the ultimate burden of persuasion that the identified accommodation is reasonable. Shin v. Univ. of Md. Med. System Corp., 369 F. App'x 472, 481 (4th Cir. 2010). To survive summary judgment, the plaintiff must produce evidence sufficient for a jury to conclude that his proposed accommodation is reasonable on its face. Reyazuddin v. Montgomery Cty., 789 F.3d 407, 414 (4th Cir. 2015). A defendant may defeat a failure to accommodate claim by showing that the accommodation would impress "undue hardship in the particular circumstances." Stephenson, 641 F. App'x at 219.

The ADA does not require an employer to violate a collectively bargained seniority system, because to do so would be unreasonable. U.S. Airways v. Barnett, 535 U.S. 391, 393 (2002). Indeed, the ADA does not require an employer to violate a collective bargaining agreement at all. E.E.O.C. v. Sara Lee Corp., 237 F.3d 349, 355 (4th Cir. 2001) ("The ADA does not require employers to disrupt the operation of a defensible and non-discriminatory company policy in order to provide a reasonable accommodation."); accord Scott v. Montgomery Cty. Gov't, 164 F. Supp. 2d 502, 508 (D. Md. 2001) (granting an exception to a CBA is not a reasonable accommodation). Further, the ADA does not require an employer to assign an employee to "permanent light duty." Crabill v. Charlotte Mecklenburg Bd. of Educ., 423 F. App'x 314, 323 (4th Cir. 2011). Moreover, an employee is not entitled to the accommodation that he wants, just one that is reasonable. Id. at 316.

## B.   DISCUSSION

### i.   *Holding A Predictable-Schedule Conductor Position*

Plaintiff argues that Defendant could have accommodated him by allowing him to "lay off" instead of "marking up." According to Plaintiff, this would have permitted him to perform the essential functions of a conductor and accommodated his PTSD, because he would only have to work predictable-schedule jobs.

Defendant argues that Plaintiff was not entitled to regularly work in a predictable-schedule conductor job, because he was not senior enough to regularly hold those positions under the CBA. Doc. 16 at 18-19. Thus, to permit Plaintiff to consistently hold a predictable-schedule conductor job, would require Defendants to violate the seniority provisions of the CBA, which it is not required to do. Id. at 19 (citing U.S. Airways, 535 U.S. at 393). Defendant further argues that the CBA requires a conductor to "mark up" for another job, when he is "bumped" from a position by a more senior conductor. Therefore, Defendant argues that Plaintiff could not perform the essential functions of a conductor job with or without a reasonable accommodation. Id.

The regular schedule positions to which Plaintiff refers are often held by the most senior employees, pursuant to the applicable CBA. Plaintiff was not sufficiently senior to regularly hold predictable schedule positions. When Plaintiff was not sufficiently senior to hold a predictable schedule position, the CBA, not Defendant, required that he "mark up" for a new position. As a matter of law, it would be unreasonable to require Defendant to carve out an exception to its collectively bargained procedures. Sara Lee Corp., 237 F.3d at 355 (4th Cir. 2001) ("The ADA does not require employers to disrupt the operation of a defensible and non-discriminatory company policy in order to provide a reasonable accommodation."), accord Scott, 164 F. Supp. 2d at 508 (granting an exception to a CBA is not a reasonable accommodation), see also U.S. Airways,

535 U.S. at 393 (the ADA does not require an employer to violate a collectively bargained seniority system).

Moreover, the ADA does not require an employer to assign an employee to "permanent light duty." Crabill, 423 F. App'x at 323. To do so would put Norfolk Southern at risk of not having enough conductors to do its business or cause the other conductors to work more. This is why the CBA requires conductors to "mark up" within the allotted timeframe. Bolander Decl. ¶ 7. Therefore, summary judgment in Defendant's favor on the "lay off argument" is appropriate.

Furthermore, there is no evidence to believe that any conductor position, whether the schedule was predictable or on call, would accommodate Plaintiff's PTSD. According to Plaintiff's psychologist, Dr. Jason Cook, Psy.D., Plaintiff suffered from anxiety because he "focusses more on aspects which could go wrong, rather than his abilities to manage the work demands." Doc. 16-1 at 9. Indeed, "[Plaintiff] does not have confidence in his own ability to manage his focus during a 10 hour shift within a variable work setting." Id. at 19. Accordingly, Dr. Cook was unable to determine with a degree of medial certainty that Plaintiff could "safely perform they job duties of a conductor." Id. Plaintiff did not produce evidence to contradict this conclusion. Indeed, Plaintiff did not produce any medical evidence at all, other than calling the Court's attention to an exhibit which Defendant entered into the record.[5] There is no evidence that a predictable work schedule position is less likely to expose Plaintiff to circumstances "which could go wrong."

Accordingly, Plaintiff's argument that he was entitled to "lay off" fails to overcome Defendant's Summary Judgment Motion.

---

[5] The Court also notes that Plaintiff did not list any individual qualified to render medical opinions as a potential witness in the Final Pretrial Order.

*ii. Reassignment to a Non-Conductor Position*

As a second argument, Plaintiff argues that Norfolk Southern could have re-assigned him to a non-conductor job to accommodate his disability. The non-conductor jobs cited by Plaintiff were not organized within the transportation department, like the conductor job Plaintiff previously held. Plaintiff claims that he called Defendant's attention to these alternative positions before he began working for the City of Green, Ohio. Plaintiff relies on his own declaration and deposition testimony in which he alleges that that he informed Norfolk Southern employees that he would be willing to perform other jobs. Doc. 18-10 38:16-20 (track laborer), 52:24-25, 53:2 (diesel mechanic), 53:23-25, 54:2 (freight car repairman), Doc. 18-13 ⁋ 3 (track laborer, signal maintainer, diesel mechanic, and freight car repairman). That argument fails for a number of reasons.

Although a reasonable accommodation "may include . . . reassignment to a vacant position," 42 U.S.C. § 12111(9)(B), an employer is "not required to find another job for an employee who is not qualified for the job he . . . was doing." Guillot v. Garrett, 970 F.2d 1320, 1326 (4th Cir. 1992); Stansbury v. City of Annapolis, 771 F. App'x 251, 252 (4th Cir. 2019) (mem.) (holding the same), see also Myers v. Hose, 50 F.3d 278 (4th Cir. 1995) ("This circuit has made it clear, however, that the duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of his present position.").[6]

_____

[6] The Fourth Circuit later clarified:

> The district court relied on Myers v. Hose, 50 F.3d 278, 284 (4th Cir.1995), as supporting its conclusion that reassignment to a vacant position can never be a reasonable accommodation in ADA cases. This conclusion is contrary to congressional direction and is in no way required by our Myers decision. Myers noted only that a particular accommodation does not become federally mandated merely because an employer "elects to establish it as a matter of policy." Id.

Williams v. Channel Master Satellite Syst., Inc., 101 F.3d 346, 350 n.4 (4th Cir. 1996), abrogated on other grounds by Baird ex rel. v. Rose, 192 F.3d 462 (4th Cir. 1999). Thus, as discussed infra, the mere fact that Defendant made it a policy to assist an employee in finding alternate employment, such an accommodation is not federally required.

The plaintiff bears the burden to show that a vacant position for which he was qualified was available. Donahue v. Consol. Rail Corp., 224 F.3d 226, 230 (3d Cir. 2000), Nartey-Nolan v. Siemens Medical Solutions USA, Inc., 91 F. Supp. 3d 770, 774 (E.D.N.C. 2015). Further, the ADA does not require an employer to create a new job to accommodate an employee. Lamb v. Qualex, 33 F. App'x 49, 59 (4th Cir. 2002).

Plaintiff has not established what the essential functions and qualifications of those positions are and that he could perform them. In other words, Plaintiff has not offered evidence to support a conclusion that he was qualified for the jobs that he claims he should have been allowed to hold. Plaintiff relies on his own declaration to support that fact, but his declaration does nothing more than state in a conclusory fashion that he was qualified for the alternate positions with no evidentiary support.[7] Doc. 18-13 ¶ 3. In this Circuit, self-serving declaration testimony without evidentiary support in the record is insufficient to defeat summary judgment. Jiggets ex rel. S.J. v. Long, 510 F. App'x 278, 286 (4th Cir. 2013), Kelley v. UPS, 528 F. App'x. 285, 287 (4th Cir. 2013) (citing Riley v. Honeywell Tech. Solutions, Inc., 323 F. App'x 276, 277 n.2 (4th Cir. 2009) (holding that plaintiff's "self-serving contentions . . . were properly discounted by the district court as having no viable evidentiary support")).

Furthermore, Plaintiff has not offered evidence to support a conclusion that those positions would have accommodated his disability and job restrictions. There is no evidence that indicates that the alternate positions had a predictable work schedule. Additionally, there is no evidence from which a jury could conclude that the alternate positions to which Plaintiff refers would not have exposed him to responsibility that was sufficiently stressful to aggravate his PTSD. At

---

[7] In Plaintiff's deposition, he also testified, "I'm a pretty qualified guy." Doc. 18-10 148:18-19. This statement likewise lacks evidentiary support, and fails to articulate what his qualifications are and what the requirements are for the jobs he desired to hold.

Plaintiff's deposition, when asked if an on call track laborer position would have been consistent with his medical restrictions, Plaintiff equivocated: "I would have to try the job to see if it fit or not. I couldn't tell you if it would work or not. It was a position that I know I could do." Doc. 18-10 40:1-25, 40:2-4. Without producing evidence that could support a conclusion that Plaintiff identified a vacant position for which he was qualified, and which would have accommodated his disability, Plaintiff cannot defeat summary judgment.

Rather, Plaintiff submits that even though the positions were vacant, and he claims to have been qualified for those positions, "[he] was not place[d] in any of them." Doc. 18-13 ¶ 3. However, Defendant was not under an obligation to give Plaintiff a new job as a matter of right. Stansbury, 771 F. App'x at 252 (mem.), Guillot, 970 F.2d at 1326, Myers, 50 F.3d 278, see also United States v. Woody, 220 F. Supp. 3d 682, 691, 694 (E.D. Va. 2016) (holding that reassignment is required as an accommodation only when it is reasonable to do so), ("Reassignment to a vacancy is not always mandated by the ADA, even as an accommodation of last resort."), ("[T]he Court holds here that the ADA does not require minimally qualified disabled employees to be granted special preferences in hiring over non-disabled applicants"), appeal voluntarily dismissed 17-1082 Doc. 17 (4th Cir. July 28, 2017).

Although reassignment may be required under appropriate circumstances, Plaintiff's counsel conceded at oral arguments that under some circumstances reassignment is not required because it would be unreasonable. However, counsel has not explained when reassignment is required or that it would be reasonable to require reassignment in this case. Further, at oral argument, when asked what authority entitled Plaintiff to reassignment, Plaintiff did not cite any authority to the Court. The undisputed record shows that Norfolk Southern employees worked to help Plaintiff identify alternative positions and prepare to interview for those positions. There is

no evidence that indicates that participation in the VRS program was out of the ordinary (that is to say, discriminatory) at Norfolk Southern, or that Norfolk Southern otherwise maintained a policy of reassigning disabled employees as a matter of course. Instead, the record shows that Norfolk Southern maintains the VRS program to help employees attain alternative employment. Indeed, Plaintiff concedes that he thought the VRS employees were trying to help him. Doc. 18-10 51:22-24. Therefore, the record shows that Norfolk Southern followed its standard, non-discriminatory procedure and it was not required to do more under the facts of this case. Guillot, 970 F.2d at 1326; Myers, 50 F.3d 278; Stansbury, 771 F. App'x at 252 (mem.).

The record also shows that Plaintiff in fact interviewed for some vacant positions, but the positions were offered to other applicants. There is no allegation, or evidence to support an inference, that Norfolk Southern offered those positions to other applicants in a discriminatory, or otherwise improper, fashion. Therefore, the fact that Plaintiff "was not place[d] in any of" those positions cannot raise a triable issue of disability discrimination.

Additionally, Plaintiff argues that Defendant could have accommodated him earlier than it did by hiring him for the storehouse clerk position. Yet, Plaintiff has also failed to show that he was ever qualified to hold that storehouse clerk position. The undisputed record shows that he twice failed a legitimate prerequisite for the storehouse clerk job, i.e., to pass a test which evaluated whether Plaintiff could type thirty-five (35) words per minute. It is undisputed that Norfolk Southern waived the typing requirement to permit Plaintiff to hold that position. Likewise, it is not clear from the record that position which Plaintiff was given in 2017, was the same job he identified in 2015. Indeed, in the declaration that Plaintiff prepared to support his reply to Defendant's Summary Judgment Motion, Plaintiff did not mention the storehouse clerk position whatsoever.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Summary Judgment Motion and **DENIES** Plaintiff's motions to strike and for adverse inferences.

The Clerk is **REQUESTED** to deliver a copy of this Opinion and Order to counsel of record and enter **JUDGMENT** in Defendant's favor.

It is **SO ORDERED**.

/s/

Henry Coke Morgan, Jr.
~~Senior United States District Judge~~
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

February 19, 2020